IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No.  4:19cr21 (RCY) |
| | ) | |
| LEO VAUGHN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) with Memorandum of Law (ECF No. 30) ("Motion for Compassionate Release"), the Response in Opposition by the United States (ECF No. 34), and other related filings.  The original *Pro Se* Letter Motion for Compassionate Release (ECF No. 28) was terminated as supplanted by the Motion for Compassionate Release filed on April 23, 2021, pursuant to the Court's Order of March 16, 2021 (ECF No. 29).  The Court has reviewed these documents, and the matter is ripe for disposition.  The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process.  For the reasons that follow, the Court will deny the Motion for Compassionate Release.

**I.  BACKGROUND**

Leo Vaughn ("the Defendant" or "Vaughn") was charged in a five-count indictment on March 12, 2019. (ECF No. 1.)  On May 14, 2019, the Defendant pled guilty before United States District Judge Henry C. Morgan pursuant to a written plea agreement and written statement of facts to Count Four, charging him with Possession of Firearm During Drug Trafficking, in

violation of 18 U.S.C. § 924(c).  (ECF Nos. 13–17.)  The statute required a mandatory minimum sentence of 60 months, with a maximum sentence of life imprisonment.  (Plea Agreement, ECF No. 14 at ¶ 1.)  The Presentence Investigation Report ("PSR") also noted that the statute requires a mandatory minimum sentence of 60 months, with a maximum sentence of life imprisonment.  (PSR, ECF No. 19 at ¶ 17 & Part D.)  On October 2, 2019, United States District Judge Morgan sentenced the Defendant to 60 months of imprisonment.  (ECF Nos.  25–27.)

In the Motion for Compassionate Release, Vaughn argues that he has already been infected with COVID-19 and that "he continues to remain vulnerable due to the conditions of confinement."  (Mot. Comp. Release, ECF No. 30 at 6.)  He contends that the BOP is not able to protect its population against COVID-19 and is not able to adequately care for those who contract COVID-19. (*Id*. at 2, 6–8.)  The Defendant seeks immediate compassionate release. (*Id*. at 11.)

## II.  LEGAL STANDARD:  COMPASSIONATE RELEASE UNDER THE FIRST STEP ACT OF 2018

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to "reduce the term of imprisonment" of a defendant for "extraordinary and compelling reasons," "upon motion of the Director of the Bureau of Prisons," or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i).  Once the administrative remedies under § 3582(c)(1)(A) have been exhausted or waived, the Court may reduce or modify a sentence when "extraordinary and compelling reasons warrant such a reduction."  *Id*.  Section 3582(c)(1)(A) also requires courts to consider

"the factors set forth in section 3553(a) to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentencing modification. *Id*.

It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). *White v. United States*, 378 F. Supp. 3d 784, 785 (W.D. Mo. 2019). While courts do not "minimize the risks that COVID-19 poses in the federal prison system," the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). It is also generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Molina*, No. 3:15cr31, 2021 WL 1323402, at *2 (E.D. Va. Apr. 8, 2021) (citation omitted). "In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, *inter alia*, the guidance of the CDC [Centers for Disease Control and Prevention], and non-binding policy statements of the United States Sentencing Guidelines." *Id.* "[T]o constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious." *Id.* To establish the existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19,[1] a defendant generally must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at

---

[1] According to his counsel, Vaughn, age 39, has already tested positive for COVID-19 once and is at increased risk if he becomes infected again. (Mot. Comp. Release at 6.)

his prison facility." *United States v. White*, No. 2:07cr150, 2020 WL 1906845, at *1 n.2 (E.D. Va. Apr. 17, 2020) (quoting *United States v. Feiling*, 453 F. Supp. 3d 832, 840 (E.D. Va. 2020)).

In *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020), the Fourth Circuit held that "there currently exists no 'applicable policy statement'" because the Sentencing Commission has not issued a policy statement since the passage of the First Step Act. *Id.* at 281. Therefore, until the Sentencing Commission issues an updated policy statement, "district courts are 'empowered to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (alteration omitted) (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)).

Although the policy statement in U.S.S.G. § 1B1.13 is no longer binding on this Court after the Fourth Circuit's decision in *McCoy*, many courts are treating § 1B1.13 "as providing useful guidance about how the Court should exercise its discretion under § 3582(c)(1)(A)," but they are not "treat[ing] its provisions as binding." *United States v. Dean*, No. 15-CR-0339(1), 2020 WL 7055349, at *1 (D. Minn. Dec. 2, 2020) (citing *McCoy*, 981 F.3d at 281); *see also United States v. Spencer*, No. 2:11cr30, 2021 WL 713287, at *2 (E.D. Va. Feb. 24, 2021) (noting that "the policy statement in U.S.S.G. § 1B1.13 is no longer binding . . . after . . . *McCoy*," but that "the court finds certain of its provisions useful in addressing [compassionate release motions]").

Section 1B1.13's guidance provides that a defendant's medical conditions, age, family circumstances, or other circumstances, either singly or in combination, can prove sufficiently extraordinary and compelling to justify compassionate release. U.S.S.G. § 1B1.13, application notes 1(A)-(D). It advises that, to be extraordinary and compelling, a defendant's medical conditions must be either "terminal . . . with an end of life trajectory" or must "substantially

diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, application note 1(A).

Similarly, a defendant may be released based on his advanced age when he "is at least 65 years old," "is experiencing a serious deterioration in physical or mental health because of the aging process," and "has served at least 10 years or 75 percent of his or her term of imprisonment." § 1B1.13, application note 1(B).  Defendants may also seek compassionate release based on family circumstances, including when the caregiver of a defendant's minor child has died or become incapacitated, or when the defendant's spouse or partner has become incapacitated and the defendant constitutes the only available caregiver.  § 1B1.13, cmt. application note 1(C).  Finally, the Sentencing Guidelines contemplate situations in which "there exists in the defendant's case an extraordinary and compelling reason [for compassionate release] other than, or in combination with, [the defendant's medical conditions, age, and family circumstances]."  § 1B1.13, cmt. application note 1(D).

Even if extraordinary and compelling reasons exist for a reduction in sentence, § 3582(c)(1)(A) requires courts to consider "the factors set forth in section 3553(a) [of Title 18] to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentence modification.  To that end, § 3553(a) requires courts to consider, among other factors, the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant.  18 U.S.C. § 3353(a)(1)-(2).

The Fourth Circuit provided additional guidance in *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). It explained that the district court must "reconsider[] the § 3553(a) factors in view of the extraordinary and compelling circumstances present in [the defendant's] case." *Id*. at 332. In his concurring opinion, Chief Judge Gregory makes it even more clear that the district court may not "fulfill its duty to reconsider the § 3553(a) factors by merely recounting the considerations that supported the original sentence." *Id*. at 335 (Gregory, C.J., concurring). "Section 3582(c)(1) necessarily envisions that the § 3553(a) factors may balance differently upon a motion for compassionate release than they did at the initial sentencing." *Id*. "If a district court's original § 3553(a) analysis could always prove that a sentence reduction would intolerably undermine the § 3553(a) factors, then 18 U.S.C. § 3582(c)(1) would, in effect, be a nullity." *Id*. Judge Gregory notes that "[a] day in prison under the current conditions is a qualitatively different type of punishment than one day in prison used to be," and that "[t]hese conditions, not contemplated by the original sentencing court, undoubtedly increase a prison sentence's punitive effect." *Id*. at 336.

Courts must also consider "evidence of rehabilitation and other post-conviction conduct." *United States v. Brown*, No. 3:90cr113, 2021 WL 3206548, *2 (E.D. Va. 2021) (citing *United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B))). The *Brown* decision also notes that a defendant's "rehabilitation alone does not provide sufficient grounds to warrant a sentence modification." *Id*. (citing 28 U.S.C. § 994(t)).

Additionally, the Sentencing Commission has advised courts to consider whether, based on the factors set forth in 18 U.S.C. § 3142(g), a defendant would present a danger to the safety of any other person or to the community if released.[2] U.S.S.G. § 1B1.13(2). As noted herein, pursuant to *United States v. McCoy*, the policy statement is not binding, but it provides useful guidance.

Ultimately, the Court may reduce a defendant's sentence under § 3582(c)(1)(A) only after (1) the defendant establishes an extraordinary and compelling reason for the reduction, and (2) the Court finds that a reduction in the defendant's sentence would not undermine the relevant § 3553(a) factors and any applicable policy statements issued by the Sentencing Commission.

### III. ANALYSIS

The United States does not dispute that Vaughn has satisfied the exhaustion requirement. But, after a careful review of the motion, memoranda, and other related documents, the Court concludes that Vaughn's health conditions do not support a finding of extraordinary and compelling reasons for a reduction in his sentence. In the Motion for Compassionate Release, there is no claim that Vaughn has a medical condition that places him at an increased risk of severe illness from COVID-19. The parties agree that Vaughn contracted COVID-19 and recovered. (Mot. Comp. Release at 2; Response, ECF No. 34 at 5.) The United States notes that Vaughn was offered the Moderna vaccine on May 10, 2021 but declined to be vaccinated. (Response at 5.) The Court confirmed with the BOP that, as of October 12, 2021, there is no

---

[2] As modified in the context of a compassionate release motion, before releasing a defendant, courts should consider: (1) the nature and circumstances of the offense of conviction, including whether the offense is a crime of violence, a violation of § 1591, a terrorism offense, or an offense involving a minor victim, controlled substance, firearm, explosive or destructive device; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his or her character, physical and mental condition, family and community ties, financial resources, history of substance abuse and criminal history, as well as whether at the time of the instant offense, the defendant was on a period of probation, parole or other form of release; and, (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4).

change regarding Vaughn's vaccine refusal status. Although Vaughn has the right to decline vaccination, "he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk." *United States v. Jackson*, No. 15cr260(7), 2021 WL 806366, at *2 (D. Minn. Mar. 3, 2021); *see also United States v. Williams*, No. CR-17-1279-1, 2021 WL 321904, at *3 (D. Ariz. Feb. 1, 2021) (finding that the defendant's refusal of the vaccine was "inconsistent with his position that he believes he is at increased risk from the virus.").

Vaughn is currently housed at FCI Petersburg Low.[3] There are currently no positive inmate cases at that facility, and there are two positive staff cases; no inmates or staff at that facility have died of COVID-19, and there have been a total of 243 inmates and 39 staff members who tested positive and recovered, according to data available at www.bop.gov/coronavirus/ (updated daily at 3:00 p.m.) (last visited October 28, 2021). Vaughn cannot establish a particularized risk of contracting COVID-19 at FCI Petersburg Low given the very low number of positive cases there.

Accordingly, the Court finds that Vaughn has not established an extraordinary and compelling reason for a reduction in his sentence.

Moreover, even if the Court found that Vaughn had established an extraordinary and compelling reason for a reduction in his sentence, the Court does not, in its discretion, find a reduction in sentence to be appropriate under the relevant § 3553(a) factors and non-binding policy statements. The Court finds that a reduction in Vaughn's sentence would undermine the relevant § 3553(a) factors. In particular, a reduction in Vaughn's sentence would undermine the need for the sentence to reflect the seriousness of the offense, promote respect for the law,

---

[3] At the time the Motion for Compassionate Release was filed, Vaughn was housed at FCI Petersburg Medium.

provide just punishment, and afford adequate deterrence, given the nature and circumstances of the underlying offenses, and Vaughn's history and characteristics.

Vaughn's criminal history is particularly troubling. In 2001, Vaughn was convicted in Newport News Circuit Court of violating the Drug Control Act. He was sentenced to five years in prison, but was required to serve only three months, with the remainder suspended on two years of supervised probation and five years of good behavior. (PSR at ¶ 25.) Despite the fact that he was charged with other offenses during this time period, he was "successfully discharged from supervision on December 9, 2002." (*Id.*) Approximately seven months later, in July 2003, Vaughn was charged with Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base and Cocaine. (PSR at ¶ 31.) He was sentenced to 300 months in prison, but that sentence was reduced to 96 months, and Vaughn was released from custody and began a period of supervision on July 2, 2010. (*Id.*) Vaughn violated that period of supervised release on two occasions, until his supervision was terminated in July 2015. (*Id.*) Less than four years later, Vaughn was charged in this case with another conspiracy to distribute controlled substances and illegal possession of firearms. Vaughn's current sentence is reasonable and appropriate, and it is no greater than necessary to achieve the objectives of 18 U.S.C. § 3553(a).

## IV.  CONCLUSION

For the reasons set forth herein, Vaughn's Motion for Compassionate Release will be denied.

An appropriate Order shall issue.

Norfolk, Virginia
Date:  November 2, 2021

/s/
Roderick C. Young
United States District Judge